IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BURL WASHINGTON, # 34193-044, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-cv-854-GPM |
| ) | |
| MARGARET HODGES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court for a merits review of Plaintiff's complaint (Doc. 1) for alleged violations of his constitutional rights by persons acting under the color of federal authority, pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). The complaint was filed on July 30, 2012, and brings claims arising from Plaintiff's incarceration at the Federal Correctional Institution at Greenville, Illinois ("Greenville"). At the time he filed this complaint, Plaintiff was confined at USP-McCreary in Pine Knot, Kentucky (Doc. 1, p. 40). He is still incarcerated at USP-McCreary, serving a 360-month sentence for drug distribution resulting in death.

This Court denied Plaintiff leave to proceed *in forma pauperis* ("IFP") and dismissed the case on September 11, 2012 (Doc. 7), because Plaintiff had already incurred three "strikes" and was not in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). Three of Plaintiff's earlier-filed cases were dismissed as frivolous or without merit. Plaintiff paid the filing fee for this action in full and the case was reopened on May 15, 2013.

**The Complaint**

Plaintiff's 40-page complaint is organized into 15 claims (some with multiple parts) against 24 named Defendants and three unknown (John Doe) correctional officers (Doc. 1, pp. 1-10). He also includes 237 pages of exhibits. A majority of the claims include allegations of retaliation. Because of the large number of claims and the length of the pleading, the Court shall adopt Plaintiff's numerical designations of his claims for clarity. Following is a summary of Plaintiff's allegations.

**Counts 1, 2, and 3**

Plaintiff begins with several claims arising from his transportation to an outside eye clinic for a medical examination on December 8, 2011. Plaintiff suffers from glaucoma and arthritis. In his first two claims, Plaintiff alleges that Defendant Hodges intentionally exposed him to freezing temperatures in the transport van in retaliation for some prior incident in June 2010.[1] This caused him extreme pain because cold temperatures aggravate his arthritis (Doc. 1, p. 11; Doc. 1-1, pp. 1-4). After they arrived at the clinic, Defendant Hodges kicked Plaintiff in the leg while he was seated in a wheelchair (Claim 3, Doc. 1 p. 12).

**Counts 4 and 5**

Defendant Hodges and Defendant Dothager (whom Plaintiff refers to as "Officer B") accompanied Plaintiff into the eye clinic examination room, and made threatening comments to him while waiting for the medical staff (Claim 4, Doc. 1, p. 12-13). Plaintiff finally told the officers he did not feel safe with them, he "wish[ed] to end this visit and return to the institution," and asked them to open the door so he could inform the medical staff (Doc. 1, p.

---

[1] Although Plaintiff refers to some "staff misconduct" which took place in June 2010 on an "escorted med trip" (Doc. 1, p. 11; Doc. 1-1, pp. 1, 8), he never states any facts about what occurred, nor does he indicate that he made any complaints about the June 2010 incident until December 8, 2011, when he returned from the medical trip with Defendant Hodges.

13). Eventually, the officers took Plaintiff back to Greenville without speaking to the medical staff or having the examination. Upon their return, Defendant Hodges "misrepresented" the events at the clinic by reporting to Defendant Salem that Plaintiff's conduct had been disorderly (Claim 5, Doc. 1, p. 14). Plaintiff reported that he had been kicked and threatened with administrative detention. Defendant Salem put Plaintiff in administrative detention.

**Count 6**

Later on the evening of December 8, Plaintiff received an incident report (No. 2242992) filed by Defendant Hodges, that included "false" statements about the clinic incident (Doc. 1, pp. 15-16). On December 13, 2011, Plaintiff was found guilty and punished with 60 days loss of commissary, visiting, and phone privileges (Doc. 1, p. 15). Plaintiff also states as part of Claim 5 that he was given five days disciplinary segregation, but does not include this among the listed punishments in Claim 6. *Id*.

**Count 7**

Next, Plaintiff alleges that he was placed in the Special Housing Unit ("SHU") on December 20, 2011, by Defendants Cooper and Hutchcraft, in retaliation for exercising his rights to pursue a grievance over the disciplinary action described above (Doc. 1, pp. 16-20). Specifically, Plaintiff had requested copies of certain documents to use at his disciplinary hearing. He did not receive the material in time to use it at the hearing, and explained to Defendant Cooper that he would now use it to pursue his grievance (Doc. 1, p. 18). Defendant Cooper took the documents away and told Plaintiff he was placing him in the SHU for "a long time." *Id*. Defendant Hutchcraft later told Plaintiff that he had been placed in the SHU for protection, but this claim was contradicted by Defendant Cross (the warden) (Doc. 1, p. 19).

**Count 8**

Plaintiff's next group of claims relates to his outpatient surgery for glaucoma on March 15, 2012, and his subsequent hospitalization at Barnes Hospital ("Barnes") from March 16 to March 22, 2012, for complications that arose after the surgery. While Plaintiff was at Barnes, he was under guard by several correctional officers around the clock. Some of these officers told him that they had been advised Plaintiff was a "problem inmate" because he had filed past complaints over staff misconduct (Doc. 1, p. 21). In retaliation for these past grievances, Plaintiff's attending officers denied him access to the bathroom on March 16, 2012, and then refused to allow him a bath or clean linen after he urinated on himself (Doc. 1, p. 21). Several other instances of retaliation followed. On March 19, 2012, Defendants Goldsborough and Hoffimeir confiscated two papers written by Plaintiff which he intended to mail to an acquaintance, along with a stamped envelope and a pen (Doc. 1, pp. 22-23). This writing became the basis for an allegedly false disciplinary report for inappropriate communication (Plaintiff showed the document to his female doctor). Defendant Jones confiscated all Plaintiff's writing material (Doc. 1, pp. 23-24). Defendants Goldsborough, Hoffimeir, and Fester intentionally "lost" Plaintiff's plastic eye patch that was prescribed for him to prevent injury to his eye after surgery (Doc. 1, pp. 23, 26). Defendants Jones and Fester, in disregard of the specific instructions by medical staff, intentionally turned the air conditioner in Plaintiff's hospital room to a very cold setting, to aggravate Plaintiff's arthritis pain (Doc. 1, p. 24). Defendant Fester struck Plaintiff on the back and the head in order to prevent Plaintiff from asking his doctor about the writing which had triggered the incident report for a "sexual proposal or threat" toward her (Doc. 1, p. 25).

**Count 9**

Plaintiff was discharged from Barnes Hospital on March 22, 2012, and returned to Greenville. Beacause Defendant Fester "lost" Plaintiff's prescribed eye patch, he was without this device for approximately five days and nights until it was replaced on March 27, 2012 (Doc. 1, p. 26). Without the patch to protect his eye, the stitches broke, causing bleeding, swelling, severe pain, infection and loss of vision. He claims that Defendants Kruse (Greenville Clinical Director) and Pollman (Health Services Administrator) delayed replacing his eye patch in retaliation for the numerous grievances Plaintiff had filed against Greenville staff.

Plaintiff filed a grievance against Defendants Goldsborough, Hoffimeir, Jones, and Fester regarding the incidents described in Count 8, and informed Defendant Baugh (a captain) that those officers "robbed" him of the prescribed eye patch. Plaintiff was scheduled for a follow-up appointment with his outside glaucoma doctor on April 11, 2012, but he did not go because he refused to be in the presence of Defendant Fester (Doc. 1, p. 26). Similarly, he "was denied" his April 20 glaucoma appointment "because Captain Baugh and Warden Cross used Frank Fester as a barrier between the inmate and his glaucoma care provider," in retaliation for Plaintiff's grievances (Doc. 1, p. 27).

**Count 10**

Plaintiff claims that Defendants Montgomery, Gillian, Pollman, Kruse, Cross, and Harvey were all deliberately indifferent to his need for pain relief for his osteoarthritis and glaucoma. Defendants Gillian (Greenville physician's assistant), Kruse (Greenville doctor), and Pollman (Greenville Health Services Administrator) refused to provide pain medication as prescribed by Plaintiff's glaucoma specialist, because prison policy prohibited the use of narcotics (Doc. 1, pp. 27-30). Their alternative medications were ineffective. Plaintiff notes that

as of April 30, 2012, he was transferred from Greenville so he was no longer under the care of these Defendants (Doc. 1, p. 28).

**Count 11**

On March 22, 2012, when Plaintiff was still in Barnes Hospital, he had a conversation with his doctor regarding whether his vision problems prevented him from writing. He said, "No, I wrote big" and let her examine a letter he had composed to a friend (Doc. 1, pp. 31-32). This was the confiscated document also mentioned in Count 8. This letter contained language that Defendant Goldsborough deemed suggestive (see Doc. 1, p. 22), and he wrote an incident report on Plaintiff falsely stating that Plaintiff gave his doctor the letter and that the statements it contained were directed at her. Plaintiff vehemently maintains that the letter was not written to the doctor, but to his friend, and he showed it to the doctor only for medical purposes in response to her question about his eyesight. He claims that Defendant Goldsborough wrote the false report in retaliation for Plaintiff's prior grievances against Greenville officers.

**Count 12**

Based on Defendant Goldsborough's incident report in Count 11, Defendant Auterson (hearing officer) found Plaintiff guilty of the charge of "code 399 (unspecified)" and stated that he violated code 299 (Doc. 1, p. 32). However, the incident report had charged him with "206 (sexual proposal or threat)." Plaintiff claims that he was not given 24-hour notice that he faced this "unspecified" charge, and that it was not supported by any evidence. Defendant Auterson punished Plaintiff, in retaliation for his multiple grievances, with 60 days loss of phone and commissary, and the revocation of 14 days of good conduct credit (Doc. 1, p. 33).

**Count 13**

Plaintiff was transferred on April 30, 2012, to a different prison, where he is in a more restrictive living environment with fewer privileges. According to Plaintiff, the transfer was engineered by Defendants Cross, Lyons, and Robinson, in retaliation for his complaint against Defendant Cross for intentionally delaying Plaintiff's April 20, 2012, medical appointment. Further, Defendants Pollman, Kruse, and Cross, knowing that Plaintiff needed a follow-up appointment within one week of April 27, 2012, intentionally failed to provide him with his glaucoma medication before the transfer. Defendant Cross ordered the transfer to purposely deny Plaintiff this follow-up appointment.

**Count 14**

Defendants Tonaselke, Spence, and an unknown female officer packed some of Plaintiff's personal property before he was transferred on April 30, 2012. After the transfer, Plaintiff discovered that many of his items were missing. Plaintiff had previously filed grievances against his unit team over the negligent loss of property when he was moved to the SHU in December 2011, and had complained to Defendants Robinson and Lirios about those problems. He claims that Defendants Tonaselke, Spence, the unknown officer, and Cross, intentionally held back his personal property in retaliation for his multiple grievances.

**Count 15**

Plaintiff claims finally that "good cause exist[s] for any procedural default" (Doc. 1, p. 37. In this section, he asserts that officials at USP-McCreary, in retaliation for grievances Plaintiff filed while at Greenville, have hindered his ability to pursue his grievances and exhaust his administrative remedies. His unit team has refused to make copies or provide him with grievance and appeal forms (Doc. 1, p. 38). He makes other complaints about McCreary Warden

Ives and Regional Director Kim White, including their failure to respond to his grievances. He "fears" another retaliatory transfer and improper medical care and assaults by McCreary staff, and asks this Court to intervene and move him to the federal medical facility at Springfield/Butner (Doc. 1, pp. 38-39).

In addition to this injunctive relief, Plaintiff seeks money damages for all the alleged violations.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

While this Order tracks Plaintiff's numerical designations of his claims (Counts 1-15), some counts must be further broken down into sub-parts. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal claims which shall receive further review:

**Count 1:** Against Defendant Hodges for deliberate indifference to Plaintiff's medical condition (intentionally exposing him to extreme cold for over an hour in the van on December 8, 2011);

**Count 3A:** Against Defendant Hodges for assault/excessive force (kicking Plaintiff in the leg);

**Count 7A:** Against Defendants Cooper and Hutchcraft, for placing Plaintiff in the SHU in retaliation for his pursuit of a grievance and documentary evidence regarding the disciplinary charge of December 8, 2011;

**Count 8A:** Against Defendants Goldsborough, Hoffimeir, Fester, and Jones for

retaliation (events of March 16-22, 2012);

**Count 8B:** Against Defendants Goldsborough, Hoffimeir, and Jones for interfering with Plaintiff's First Amendment right to correspond with friends and family (confiscation of written material, paper, pens, envelopes);

**Count 8C:** Against Defendants Goldsborough, Hoffimeir, Jones, and Fester for deliberate indifference to Plaintiff's medical condition (intentionally confiscating his eye patch – Goldsborough, Hoffimeir, and Fester); (turning air conditioner down against medical orders – Jones and Fester);

**Count 8D:** Against Defendant Fester for excessive force (striking Plaintiff on the back and head);

**Count 9:** Against Defendants Baugh, Cross, Kruse, and Pollman for retaliation and deliberate indifference to Plaintiff's medical needs for a replacement eye patch and post-surgical medical appointments;

**Count 10A:** Against Defendants Gillian, Pollman, and Kruse for deliberate indifference to medical needs (failure to provide prescribed pain medication or adequate replacement during January – April 2012);

**Count 11A:** Against Defendant Goldsborough for retaliation (filing a false disciplinary charge over the document Plaintiff showed his doctor);

**Count 12A:** Against Defendant Auterson for retaliation (finding Plaintiff guilty of a false disciplinary charge over the document Plaintiff showed his doctor);

**Count 13A:** Against Defendants Cross, Lyons and Robinson for the retaliatory transfer of Plaintiff;

**Count 13B:** Against Defendants Pollman, Kruse, and Cross for deliberate indifference to

Plaintiff's serious medical condition (denial of glaucoma medications at the time of his transfer);

**Count 14A:** Against Defendants Tonaselke, Spence, Cross, and a Jane Doe Female Officer, for withholding Plaintiff's property in retaliation for his past grievances.

### Severance of Claims

While the above claims, at this pleading stage, appear to merit further review, the Court finds that some of them must be severed into separate actions. In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George,* 507 F.3d at 607 (citing 28 U.S.C. § 1915(b), (g)). Plaintiff's complaint contains three groups of unrelated claims against different Defendants. Counts 1, 3A, and 7A all involve the events of December 8, 2011, and alleged retaliation for Plaintiff's grievance over those events. Counts 8A-D and Counts 11A and 12A all arise from Plaintiff's hospitalization in March 2012. Further, Defendant Goldsborough is named in both Counts 8 and 11, so it is appropriate to keep them in the same action. *See* FED. R. CIV. P. 18(a). Finally, Counts 9, 10A, 13A, 13B, and 14A arose after Plaintiff's hospitalization ended, and involve common Defendants. The Court is cognizant that some of the later claims include allegations of retaliation for Plaintiff's actions that are the subject of some of the earlier claims. However, this link is not sufficient to require all claims to remain in the same case, in light of *George*.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the above sets of claims. Counts 1, 3A, and 7A shall remain in this original case. Two new cases shall be opened, each with a newly-assigned case number. The first new case

shall include Counts 8A-D, 11A, and 12A. The second new case shall include Counts 9, 10A, 13A, 13B, and 14A. However, Plaintiff shall have an opportunity to voluntarily dismiss two out of his three cases if he does not wish to proceed on all of these claims or incur two additional filing fees. In other words, Plaintiff may allocate the $350 filing fee he has already paid toward either the original case (Case No. 12-854-GPM, containing Counts 1, 3A, and 7A), or he may choose to apply that fee toward one of the newly severed cases. But if he wishes to proceed with litigating more than one case, he must pre-pay the additional filing fee(s), consisting of $350.00 for each case.[2] Full pre-payment is required, because this Court has already determined that Plaintiff does not qualify to proceed *in forma pauperis* on any of the claims brought herein.

**Claims to be Dismissed**

The following claims shall be dismissed for failure to state a claim upon which relief may be granted:

**Count 2A:** Retaliation claim against Defendant Hodges as described in Claims 1 and 2. Plaintiff never stated that he engaged in any protected activity prior to the December 8, 2011, incident. He thus has failed to include one of the required elements of a retaliation claim, namely, to identify the protected act that triggered the alleged retaliation. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (to state a claim, the reasons for the retaliation must be identified, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim); *Cain v. Lane,* 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (complaint must allege a chronology of events from which retaliation may plausibly be inferred). This claim shall be dismissed without prejudice. If he does not choose to

---

[2] Effective May 1, 2013, the filing fee has been increased to $400.00 for any civil case in which a person does not qualify for IFP status. However, since this action was filed before the effective date of the new administrative fee, the newly severed cases are deemed a continuation of the original action and shall not be subject to the additional fee.

voluntarily dismiss the instant case, Plaintiff shall have one opportunity to submit an amended complaint herein, to plead any facts which may exist to support a retaliation claim against Defendant Hodges for the December 8, 2011, medical trip.

**Count 2B:** Claim against Defendant Warden Cross related to Plaintiff's transportation in a van without adequate heat. Defendant Cross was not personally involved in the decision to leave the van windows open, nor is there any indication that he had any knowledge that Plaintiff's health would be at risk from the conditions in the van. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (a defendant must have been personally responsible for the deprivation of a constitutional right in order for liability to attach). This claim is dismissed with prejudice.

**Count 3B:** Retaliation claim against Defendant Hodges as described in Claim #3 (kicking Plaintiff as retaliation). As noted in Count 2A above, Plaintiff fails to state a retaliation claim because he did not identify any protected act on his part that allegedly triggered the "retaliation."

**Count 4:** Retaliation and harassment by Defendants Hodges and Dothager in the Eye Clinic. The comments described by Plaintiff amounted to no more than mere verbal harassment, which does not rise to the level of a constitutional claim for cruel and unusual punishment. *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws"). As to the retaliation claim, Plaintiff says that Defendant Hodges' action of keeping Plaintiff locked in the examination room with no contact with the medical staff was in retaliation for his request to speak with the medical staff. This argument is circular and does not state a retaliation claim. Further, before asking to speak

to the medical staff, Plaintiff had clearly requested to be returned to Greenville because he did not feel safe with the attending officers. Plaintiff does not have the right to dictate how the officers should respond to his demands, or to interrupt the operations at the medical clinic to summon a staff member to his examination room. The natural consequence of Plaintiff's request to go back to Greenville was that he was likely to miss the opportunity for an examination. Any medical complications from this missed exam are thus attributable to Plaintiff's own actions.

**Count 5:** There was no constitutional violation by Defendant Salem for placing Plaintiff into administrative segregation upon his return from the medical trip on December 8, 2011. Defendant Hodges reported that Plaintiff's behavior had been disorderly. Regardless of the truth or falsity of her statements, officials may put an inmate into administrative detention at any time. *Williams v. Ramos*, 71 F3d 1246, 1248 (7th Cir. 1995) (prison officials have discretion to place inmates in administrative or investigative segregation, or involuntary protective custody, and no liberty interest is implicated by these types of confinement); *see generally Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983). Further, there is no constitutional requirement to investigate any potential disciplinary charges before sending an inmate to administrative segregation. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (in order to satisfy due process concerns, a prisoner facing discipline must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed; there is no "investigation" requirement). Plaintiff's claim that Defendant Salem, in retaliation for Plaintiff's report of staff misconduct, failed to investigate the facts and failed to inform appropriate personnel does not state a claim. Defendant Salem did not have any constitutional duty to either perform an investigation or inform other staff of Plaintiff's verbal complaints.

**Count 6:** Plaintiff claims a violation of procedural due process, retaliation, and harassment, for Defendant Hodges' issuance of an incident report that contained false charges over the events of December 8. Plaintiff was found guilty after a hearing on December 13, 2011, and sanctions were imposed. He claims a due process violation because the charges were "not supported by any evidence" (Doc. 1, p. 16). However, Defendant Hodges' statement of the facts provided sufficient evidence to sustain the charges, even if Plaintiff disputes her veracity. While the decision of a disciplinary hearing board must be supported by "some evidence," *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994), even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007). Plaintiff's allegations fail to state a due process claim. Plaintiff's retaliation claim is that Defendant Hodges filed a false disciplinary report on him over the events of December 8, 2011, at the Eye Clinic because he reported her "misconduct" involving the same events. This again presents a circular argument, and he fails to state a retaliation claim. Finally, he does not elaborate on his claim for "harassment," but as stated above, harassment does not generally violate the Constitution.

**Count 7B:** Plaintiff states no claim against Defendant Cross with reference to his retaliation claim for the SHU placement. The complaint does not indicate that Defendant Cross was personally involved in the retaliatory act. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). His administrative approval of the SHU placement does not amount to the personal involvement that is needed for liability to attach, and this claim shall be dismissed with prejudice.

**Count 10B:** Plaintiff made no factual allegations that Defendants Mongomery (a contracted optometrist), Harvey (BOP Regional Clinical Director), or Cross (Warden) had any

personal involvement in the decisions regarding Plaintiff's pain medication. Indeed, Defendant Cross is not a medical provider. There is no supervisory liability in a civil rights action, and absent personal involvement in the deprivation of a constitutional right, no liability will attach. *Sanville*, 266 F.3d at 740. The deliberate indifference claim against these Defendants shall be dismissed with prejudice.

**Counts 11B and 12B:** As noted above, Plaintiff may proceed at this time with his retaliation claims (Counts 11A and 12A) connected with the allegedly false disciplinary charge filed by Defendant Goldsborough and sustained by Defendant Auterson. Whether Plaintiff may have a claim for deprivation of a liberty interest without due process for his "conviction" on this disciplinary charge is a separate question. Where a faulty disciplinary proceeding results in lost good conduct time, there may be a constitutional violation. However, such a claim is not cognizable in a civil rights action unless the disciplinary "conviction" has been expunged or invalidated. *Heck v. Humphrey*, 512 U.S. 477, 489 (1994). Further, Plaintiff may bring a challenge to the loss of good time in a separate habeas proceeding pursuant to 28 U.S.C. § 2241, once he has exhausted his administrative remedies. The due process claims against Defendants Goldsborough (11B) and Auterson (12B) shall be dismissed without prejudice.

**Count 13C:** Plaintiff does not state a claim for retaliation or deliberate indifference to medical needs against Defendant Harvey regarding the April 30, 2012, transfer and failure to provide medication. He states only that Defendant Harvey was aware of Plaintiff's need for a follow-up glaucoma appointment. He does not allege that Defendant Harvey, who is not on staff at Greenville, but is a regional administrator, took any part in the decision to transfer Plaintiff or had any personal involvement in seeing that Plaintiff was given his medications. As previously noted, there is no supervisory liability in a civil rights case. This claim against Defendant

Harvey shall be dismissed with prejudice.

**Count 14B:** Plaintiff fails to state a retaliation claim against Defendants Lirios or Robinson, because neither of them was personally involved in the actions on April 30, 2012, that deprived Plaintiff of his property. Their earlier conduct that caused Plaintiff to lose other property during his stay in the SHU was by Plaintiff's own description, merely negligent. Negligence does not violate the Constitution, nor can it form the basis for a civil rights claim. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). This claim shall be dismissed with prejudice.

**Count 15:** None of these allegations involve any of the Greenville Defendants, but instead are directed toward prison officials at USP-McCreary. As such, without comment on the merits of any of the claims in Count 15, this Court has no jurisdiction to entertain them and they must be brought in the district where USP-McCreary is located. Insofar as Plaintiff's allegations pertain to the question of exhaustion of his remedies as to any of the surviving claims in this action, he may assert these matters at the appropriate time (such as in response to a motion for summary judgment or dismissal). Count 15 shall be dismissed without prejudice.

**Defendants Lappin and Laird:** Although Plaintiff lists these two among the named Defendants (Doc. 1, pp. 4, 6), he makes no allegations against either of them in the body of the complaint that would indicate personal involvement in the claimed constitutional violations. Neither is a Greenville official. Defendant Lappin is the Director of the Federal Bureau of Prisons, and Defendant Laird is a Regional Director. Plaintiff's only further mention is that Defendant Lappin failed to provide him with some requested documents (Doc. 1, p. 34). These Defendants shall be dismissed with prejudice.

**Disposition**

**COUNTS 2A, 3B, 11B, 12B,** and **15** are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.  **COUNTS 2B, 4, 5, 6, 7B, 10B, 13C,** and **14B** are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.  Defendants **DOTHAGER, SALEM, LAPPIN, MONTGOMERY, HARVEY, LAIRD,** and **LIRIOS** are **DISMISSED** from this action with prejudice.

**IT IS HEREBY ORDERED** that Plaintiff's claims in **COUNTS 8A, 8B, 8C, 8D, 11A, and 12A** are **SEVERED** into a new case.  That new case shall include all claims against **DEFENDANTS GOLDSBOROUGH, HOFFIMEIR, FESTER, JONES,** and **AUTERSON.**  Likewise, Plaintiff's claims in **COUNTS 9, 10A, 13A, 13B, and 14A** are **SEVERED** into a second, separate new case.  That new case shall include all claims against **DEFENDANTS BAUGH, CROSS, KRUSE, POLLMAN, GILLIAN, LYONS, ROBINSON, TONASELKE, SPENCE, and the JANE DOE FEMALE OFFICER.**

The new cases **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings.  In each new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order
(2) The Original Complaint (Doc. 1)

As noted above, if Plaintiff does not wish to incur and pre-pay additional filing fees, he may voluntarily dismiss either or both of the two newly severed cases.  Alternatively, he may voluntarily dismiss this case and one newly severed case, applying the fee paid in this case to whichever single case remains open.  Plaintiff is **ORDERED** to notify the Court in writing within 35 days (**on or before July 29, 2013**) as to which case(s) he wishes to voluntarily dismiss.  Unless Plaintiff notifies the Court that he does not wish to pursue either or both of the newly opened actions, he **will be responsible for an additional $350.00 filing fee** in each new

case.  In addition, because Plaintiff is ineligible to proceed IFP on these claims, if he decides to proceed on more than one case, **he must pay the $350.00 filing fee in full within the 35-day deadline above** for the additional case(s).  Service shall not be ordered on any of the Defendants in this or the severed cases until after the deadline for Plaintiff's response.

    **IT IS FURTHER ORDERED** that the <u>*only claims remaining in this action are COUNTS 1, 3A, and 7A against Defendants Hodges, Cooper, and Hutchcraft,*</u> for claims that arose in connection with the December 8, 2011, medical trip.  This case shall now be captioned as: **BURL WASHINGTON, Plaintiff, vs. MARGARET HODGES, GARY COOPER, and DAVID HUTCHCRAFT,  Defendants.**

    **IT IS FURTHER ORDERED** that Defendants **GOLDSBOROUGH, HOFFIMEIR, JONES, FESTER, TONASELKE, UNKNOWN PARTY, SPENCE, CROSS, BAUGH, POLLMAN, KRUSE, GILLIAN, AUTERSON, LYONS, and ROBINSON** are **TERMINATED** from *this* action with prejudice.

    Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED:** June 24, 2013

/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge