IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BURL WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-854-JPG-DGW |
| ) | |
| MARGARET HODGES, GARY COOPER, ) | |
| and DAVID HUTCHCRAFT, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment on the issue of Exhaustion be **GRANTED** (Doc. 38), that Plaintiff's Motion for Summary Judgment on Exhaustion be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

INTRODUCTION

Plaintiff filed a Complaint on July 30, 2012 alleging 15 claims against 24 defendants (Doc. 1).  The Complaint was initially dismissed because Plaintiff failed to pay the filing fee after his Motion to Proceed *in forma pauperis* was denied (Plaintiff had incurred three "strikes" and was accordingly required to pay the full filing fee).  Plaintiff paid the filing fee on May 13, 2013 and this case was reopened (Doc. 13).  On June 24, 2013, various claims were severed from

this case into two additional cases, 3:13-cv-613-MJR-DGW and 3:13-cv-614-MJR-SCW.

Plaintiff currently is incarcerated at the Federal Correctional Institution at Williamsburg, South Carolina. The events giving rise to his Complaint occurred while he was incarcerated at the Federal Correctional Institution at Greenville, Illinois.

In this case, Plaintiff is proceeding against three Defendants, Margaret Hodges, Gary Cooper, and David Hutchcraft with respect to Counts 1, 3A, and 7A (Doc. 17):[1]

> **Count 1:** Against Defendant Hodges for deliberate indifference to Plaintiff's medical condition (intentionally exposing him to extreme cold for over an hour in the van on December 8, 2011);
>
> **Count 3A:** Against Defendant Hodges for assault/excessive force (kicking Plaintiff in the leg) [on December 8, 2011];
>
> **Count 7A:** Against Defendants Cooper and Hutchcraft, for placing Plaintiff in the [Special Housing Unit] SHU on December 20, 2011 in retaliation for his pursuit of a grievance and documentary evidence regarding the disciplinary charge of December 8, 2011.
>
> (Doc. 14, pp. 8-18).

Defendants filed an Answer on December 13, 2013 (Doc. 35) asserting the affirmative defense that Plaintiff failed to exhaust his administrative remedies. Defendants filed their Motion for Summary Judgment on the issue of exhaustion on January 21, 2014 (Doc. 38). Prior to the filing of Defendant's Motion, Plaintiff filed a "Motion Confirming Exhaustion of All Administrative Remedies and Confirming Defendant's Acts as Alleged, if True, Waives Immunity" (Doc. 37). While Plaintiff did not file a response to the Defendants' Motion for Summary judgment, he did file

---

[1] Plaintiff also alleged two counts, Counts 2A and 3B, against Defendant Hodges: that Defendant Hodges exposed Plaintiff to freezing temperatures during transportation and that he kicked Plaintiff in retaliation for an unspecified protected activity, respectively. These two Counts were dismissed without prejudice and Plaintiff was directed to file a First Amended Complaint by August 27, 2013 that would set forth facts supporting these retaliation claims (Doc. 17, p. 2-3). No such amended pleading has been filed.

his own Motion for Summary Judgment on the issue of exhaustion on February 22, 2014 (Doc. 43) to which Defendants responded (Doc. 50). A hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was held on March 5, 2014 in which Defendants appeared by counsel and Plaintiff appeared by video-conference.

### FINDINGS OF FACT

As indicated above, the conduct that Plaintiff complains of occurred on December 8, 2011 and December 20, 2011. Plaintiff states that he sought administrative remedies through four (4) separate grievances identified as 670685, 670688, 682036, and 684572 (Doc. 37, p. 1). Each grievance will be taken in turn.

Grievance **#670685** was submitted on December 21, 2011 and concerned the "misconduct" of Defendant Hodges on December 8, 2011 (Plaintiff refers to injuries he sustained by Defendant Hodges but does not specify with particularity how he was injured) (Doc. 1-4, 29-40; Def. Ex. D, Doc. 38-2, pp. 30-47). Plaintiff received a response from the Warden on January 11, 2012, in which the Warden indicated that the concerns in this grievance were addressed in a response to grievance #670688 (which covered the same areas) and that his claims of staff misconduct were going to be reviewed by a Special Investigative Supervisor (Doc. 38-1, p. 44). Plaintiff appealed and the Acting Regional Director responded on February 7, 2012 (again indicating that his claims of staff misconduct were being reviewed by the "appropriate authority" (Doc. 38-2, p. 47). Plaintiff's appeal to the Central Office was received on March 12, 2012 (Doc. 1-4, p. 32). The grievance was "rejected" because Plaintiff submitted more than one "continuation page"; Plaintiff was granted 15 days to resubmit (Doc. 1-4, p. 31). Plaintiff resubmitted his appeal which was received on April 18, 2012 and again rejected because of excessive continuation pages (Doc. 1-4, p. 29-30). There is no indication in the record that

Plaintiff resubmitted the appeal (for a second time) in the proper format within the 15 days allowed.

At the hearing, Plaintiff testified that the Central Office miscounted the "continuation pages" and counted an attached exhibit as a continuation page (when it was not). Thus, Plaintiff contends that an error on the part of the Central Office should not count against him because he submitted this grievance and appeals in a timely manner. There is no evidence, however, that Plaintiff actually resubmitted his appeal after the second rejection notice.

Grievance **#670688** is dated December 27, 2011 and concerned "staff misconduct" related to the December 8, 2011 interaction with Hodges and Plaintiff's improper placement the SHU on December 20, 2011 in order to retaliate (Doc. 38-2, pp. 52-54). This grievance followed the same path as grievance #670685: The Warden responded on January 11, 2012 indicating that the allegations will be reviewed by a Special Investigative Supervisor; the Acting Regional Director responded on February 23, 2012 indicating that he was appropriately placed in SHU and that his claims of misconduct would be reviewed (Doc. 38-2, pp. 59, 61). Plaintiff submits a document that is entitled "Central Appeal" which indicates that it was completed and mailed on March 26, 2012 (Doc. 1-4, p. 47). The record does not contain any response from the Central Office. However, records from the BOP indicate that the Central Office appeal was rejected for the same reasons as for #670685 and Plaintiff failed to resubmit in the proper format (Doc. 38-1, p. 3, Heather MacConnell Declaration ¶6; Doc. 38-2, p. 51).

Grievance **#684572** was submitted on April 10, 2012 and concerned denial of medical care from August to December 2011, an assault on December 8, 2011, and various other incidences in 2012 (Doc. 1-4, p. 19; 38-2, p. 65). The Warden responded on April 24, 2012

indicating that staff misconduct allegations would be forwarded to the Special Investigative Supervisor (Doc. 1-4, p. 18). Plaintiff appealed to the Regional Director who indicated, on May 24, 2012 that Plaintiff's claims were being forwarded for review to the "appropriate authority" (Doc. 1-4, p. 16). Plaintiff submits a document entitled "Central Office Appeal" and dated June 13, 2012 that does not contained a "received" stamp; nor does Plaintiff provide a response from the Central Office (Doc. 1-4, p. 15). Records provided by Defendant reveal that no appeal was received by the Central Office (MacConnell Dec. ¶ 7; Doc. 38-2, p. 64).

At the hearing, Plaintiff testified that during the time that an appeal to the Central Office was due, he was being transferred from prison to prison in an attempt to interfere with his ability to grieve the conditions of his confinement: Plaintiff testified that on April 3, 2012 he was housed at FCI Greenville, on April 30, 2012 he was transferred to FCI Oklahoma, and on May 24, 2012, he was transferred to USP McCreary. During this time period, however, Plaintiff filed a number of grievances and appeals (Doc. 38-2, pp. 24-26). The Court does not find Plaintiff credible in his testimony that he was prevented for appealing his grievances. Plaintiff also testified that the copy of the Central Office Appeal attached to complaint (Doc. 1-4, p. 15) is a copy of the document that he actually mailed to the Central Office. As indicated above, there is no record that the document was received and there is no evidence in the record that Plaintiff attempted to follow-up on the status of this grievance. Plaintiff is not unfamiliar with the grievance process, having availed himself of filing dozens of grievances and appeals. The Court finds it incredulous that Plaintiff would have failed to inquire as to the status of this grievance had he actually submitted it to the Central Office.

The final grievance, **#682036**, was submitted directly to the Regional Director on March

22, 2012 because it "is too sensitive to file with the Warden" (Doc. 1-4, p. 66; Doc. 38-2, p. 70). This grievance appears unrelated to the claims in this case – it concerns actions taken in March 2012 by correctional officers who are not a party to this lawsuit. In any event, this "sensitive" grievance was rejected by the Regional Director which instructed Plaintiff to file a grievance at the institutional level (Doc. 1-4, p. 65). Plaintiff appealed to the Central Office, and raised an additional claim that he was being retaliated against for submitting earlier grievances (including those identified above) (Doc. 1-4, p. 63). This appeal was rejected by the Central Office and Plaintiff was again instructed to seek relief at the institutional level.

  At the hearing held on March 5, 2014, Plaintiff represented to the Court that he recently no longer has the ability to read or write due to blindness. He expressed that, because of his condition, he was unable to fully respond to Defendants' arguments and that he was unable to fully recall the details of his grievances. The Court notes, however, that Plaintiff is familiar with both the grievance process and litigating in federal Court. This lawsuit is at least Plaintiff's fourth suit filed in federal court. Plaintiff, in anticipation of the affirmative defense of failure to exhaust, attached to his Complaint the grievances and appeals that he believed were relevant (the Complaint was apparently filed prior to Plaintiff's current blindness). Thus, the Court has before it all of the documents that are relevant to exhaustion. Plaintiff also was able to file two other documents, the January 13, 2014 Notice (Doc. 37) and his own Motion for Summary Judgment on Exhaustion (Doc. 43) in which he referred to the documentary evidence and made arguments related to his efforts at exhaustion. That Plaintiff cannot now recall the details of this grievance filing and appeals (which is unsurprising given the number of administrative remedies Plaintiff has sought), would not prevent this Court from determining whether he exhausted his

administrative remedies and issuing a recommendation. At the hearing Plaintiff seemed familiar with the dates when events happen and the general gist of his grievances and appeals. Moreover, Plaintiff did not seek to have any document read to him in order to refresh his recollection as to events. Therefore, this Court finds that Plaintiff's current blindness would not prevent a finding as to exhaustion.

## DISCUSSION

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*,

407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

    The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

    An inmate is required to exhaust only those administrative remedies available to him. *See*

42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

Federal prisoners must exhaust administrative remedies by following the guidelines set by the Bureau of Prisons. *See* 28 C.F.R. §542.10 et seq. Generally, an inmate incarcerated in a federal prison must take the following four steps to exhaust his administrative remedies. First, he must attempt to resolve his grievance informally with the prison's staff. 28 C.F.R. §542.13. Second, after trying to resolve his concerns informally, he may submit a written Administrative Remedy Request (Form BP-9) to the Warden. 28 C.F.R. §542.14. These first two steps must be performed within 20 days of the incident about which the inmate complains. *Id.* Third, if his administrative remedy request is denied, he may appeal it to the appropriate Regional Director by submitting a Form BP-10. 28 C.F.R. § 542.15. And fourth, if the inmate is unsatisfied with the Regional Director's response, he may appeal that decision to the General Counsel (Form BP-11). *Id.* While this four-step process is the normal route an inmate must utilize to exhaust his

administrative remedies, if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if his administrative request became known at the institution, he does not have to send his administrative request to anyone at the prison. 28 C.F.R. §542.14. Instead, he can mark the request "Sensitive," explain why he did not submit his request to the prison, and send it directly to the appropriate Regional Director. *Id.*

The only two timely grievances, **#670685** and **#670688**, were not submitted to the Central Office in the appropriate manner: Plaintiff attached more than the one page that is allowed by regulations and failed to submit and appropriate appeal within the deadline provided. 28 C.F.R. § 542.15(b)(3). As indicated by the Supreme Court, "[p]roper exhaustion demands compliance with an agency's deadlines and the other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. § 90-91. Plaintiff's grievance history is a prime example of the necessity of the regulation limiting the length of appeals to one additional page and the Supreme Court's requirement that administrative regulations setting forth an orderly structure should be followed. Plaintiff has filed dozens of grievances throughout 2011 and 2012. If the grievances identified above are any indication, he files multiple grievances about the same incidents and includes numerous pages of unnecessary information and citations to policies and various references to his own records and previous grievances. Such repetitive grievances and irrelevant content would compel any agency to require strict compliance with rules of form.

As to grievance **#684572**, Plaintiff failed to exhaust by failing to appeal to the Central Office.

As to grievance **#682036**, Plaintiff did not originally grieve the matters that are the

subject of this lawsuit and this grievance is untimely, having been filed beyond the 20 days provided by regulation. 28 C.F.R. § 542.14. Plaintiff also failed to submit the grievance to the Warden once the Regional Director and Central Office deemed his issue to not be "sensitive." *Id.* § 542.14(d). Plaintiff has accordingly failed to exhaust this grievance, even if it could be considered relevant.

In Plaintiff's Motion for Summary Judgment (Doc. 43), he highlights a number of other grievances that may be related to his claims. None of these highlighted grievances, however, were filed within 20 days of either December 8, 2011 or December 20, 2011.

Plaintiff appears to be competent and capable of filing grievances and appealing them. The failure to follow the regulations, then, should not be excused.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants be **GRANTED**, that the Motion for Summary Judgment filed by Plaintiff be **DENIED**, that the Court enter judgment in favor of Defendant and against Plaintiff, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: March 14, 2014**

        **DONALD G. WILKERSON**
        **United States Magistrate Judge**